Good morning. May it please the Court. My name is Robert Tyler with Tyler & Birch on behalf of the Chino Valley Unified School District. I would appreciate having the opportunity to reserve five minutes for rebuttal. Please try to keep your own time. Yes. Thank you for the opportunity. I would first like to address the scope of this appeal and the Chino Valley Unified School Board specifically is appealing and only appealing the judgment as it pertains to the prohibition of permitting the invocation policy from being implemented to the extent that the judge issued a judgment and an injunction there. The school board does not challenge the district court's legal finding pertaining to the stated Bible readings and proselytizing. But we do argue that the judgment relating to the Bible reading and the proselytizing is now moot because the board adopted board policy 9010.5. Right, but you could change that at any time, couldn't you? I mean, you could rescind that policy at any time. Yes, Your Honor. I would assume that would be potentially possible. However, I don't believe that in cases past when courts have looked at actions where a legislative body has taken to address a concern that the courts necessarily just throw it out because of the potential that it might be rescinded. But it doesn't make the case moot, right? It doesn't make that issue moot. I would argue it does, Your Honor. But even still, even if that aspect of the case is not moot, the Chino Valley Unified School District is not appealing the legal finding of the district court and the injunction as it pertains to the Bible reading and so-called proselytization by two members of the board. Frankly, it was mostly one member of the board, a minority, that did make those statements. And so what we have in front of us today is the legal question of whether the legislative prayer case from Marsh and from Galloway apply in the school setting. Or is this a school prayer case? And we contend, Your Honors, that this is absolutely a legislative prayer case. The school board is a legislative body, as we've identified under California code. The California government code, Section 54952, says that the governing body of a local agency is a legislative body. And the code section just prior to that, 54951, defines a school district as a local agency. And the Fifth Circuit is the only circuit that has addressed the question of whether or not a school board invocation policy is or is not constitutional post the town of Greece versus Galloway case. And that was the American Humanist Association versus McCarty. Your position is that it's an absolute right line rule, no matter how much proselytizing goes on. You can't consider that when you look at the particular school's prayer policy. If it's a prayer policy combined with a proselytizing policy, that makes no difference as far as the legality of the prayer policy. No, Your Honor, I wouldn't go so far as to say that. I'm not so sure that that's reasonable. But what I do believe is important in this case is the context. Well, that's the context. Exactly. You have not appealed the findings of proselytizing. So the context is that you have a school which is having opening prayers, followed by a lot of religious activity later in the program. Your Honor, I believe that there is a mistake that was made in the district court and in our opposition's briefing that tries to conflate. But you're not appealing that. We're not appealing the legal finding that there was proselytizing or Bible readings. Certainly there was Bible readings. It's proselytizing. Yes, Your Honor. You're not appealing. But when this court takes a look at this de novo, the court can look and see that the invocation policy was adopted independently, entirely independently, from what one member of the board who read Bible verses periodically and often, and a second board member did on occasion. And what happened in those instances, I would like to direct the court's attention to a couple instances to show why these should not be conflated together, why the court should look at the invocation policy as standing on its own, apart from what a couple individual board members who don't represent the majority of the board, two individual board members, don't make policy. So how can we do that when the district court was looking at the totality of the facts, including the Bible readings, the proselytizing conduct, and it entered the decision it entered? So you're asking us to consider less facts than the district court considered. And what are you ultimately asking us to do if we were to reverse the district court? What are you specifically asking us to do? Well, I would ask this court to find that the invocation policy is constitutional and to reverse the district court's injunctive order as it relates to the invocation policy only. However, if this court agreed with me that the aspect of Bible reading and proselytization is moot, that could also be dismissed. But that is not as much concern. The majority of the school board here, frankly, the entire school board, voted and specifically said we want to appeal the invocation policy only. And I'd like to address this issue of I'm not asking this court to say we're not going to consider all of the facts in this case. Not at all. I'm asking this court to take a look at a couple examples. Virtually all of the problematic statements, the religious statements, whether it be Bible reading or proselytization, all of those statements occurred hours after, typically hours after, the invocation after the prayer. And let me give an example. The minutes from June 27, 2013, I direct the court's attention to excerpt of record page 143. It's volume three, tab nine, page 143. The prayer, the invocation occurred at the beginning of the school board meeting. And the beginning of the school board meeting was approximately 7.04 p.m. Well, just prior to the 8.29 p.m. adjournment, Mr. Crews read from the Bible. That's found at excerpt of record pages 149 and 150. There's another example that has even greater distance. In the minutes from October 17, 2013, the prayer occurred at approximately 7.05.  Counsel, I see your point. I'm going to see your point, and I'm going to assume for the minute that those statements are not relevant to our discussion about this. But what evidence do you have, what record evidence do you have that invocations at school board meetings are embedded in the history and tradition of our country, which is sort of the rationale for the cases March in town versus Greece and the legislative exception? I mean, what historic evidence do you have? Okay. In the record, any in the record. Well, Your Honor, in the record, the only reference, we were not counsel record in the district court. But as I see in the record, the only evidence of a longstanding practice is in the invocation policy itself, wherein the school board says that it has maintained or, excuse me, it has a long tradition. I believe that would be in the first page of that invocation policy. And so but, however, the town of Greece scenario, I believe the town of Greece only started prayers in the 90s. It's not that not specific to them, but I mean, even before the Constitution, our legislative body started with an invocation. But at the time of the Constitution, we didn't have free public education. So we don't have that equally long time of tradition and history of invocations at school board meetings. So in in the amicus brief from the Congressional Prayer Caucus Foundation, there is a citation. I believe it's on pages seven to nine. They cite to a similar law review article that we cited to by a Ms. Wick that goes through a long history and identifies a significant history of invocations in school board settings. But I think important from a legal perspective is that the town of Greece case articulates a clear position that it is what is in the fabric of legislative practice in our history as a country, not just in the city council setting, but what occurred. The test is whether or not the invocation policy follows the longstanding practice that are that our country has had as it relates to state legislatures and Congress. And I think we don't I don't think we necessarily analyze it that way. I don't think we necessarily say if it's if it's a legislative body, no matter what else goes on, it gets a legislative exception. And if it's a school, a public school, then prayer is not allowed. I mean, I don't think we this is I don't think we need to say this is an either or test. I think we have to look at all the circumstances of the school board and what it does and who is there. So following up on that, as you know, in connection with the Chino Valley School Board, students, there was a student on the board, students attended, things that implicated students were involved. And really the imprimatur of the school district applied to what the school board did. And to me, that's different than when we're talking about town council meetings, such as in the town of Greece and other activities. And so when I looked at these facts that the district court found, it seemed to be that there was an impermissible commingling of church and states such that the establishment clause was violated. And I don't know that you necessarily have to say whether it's a school prayer place or legislative history case. But but the court has always sort of looked at this particular facts. And these are pretty egregious facts. And so you ask your really are asking us to ignore the facts. If we were to find that the invocation policy is, in fact, constitutional rather than unconstitutional. So I'm trying to understand how we could do that. Well, I appreciate that, Your Honor. And I the invocation policy was was adopted by a majority of the board. If if the question of whether or not there was policymaker liability in this case under Manel, I think that it would be difficult to find the school board liable for the statements made by one individual in particular. And who's on the board who doesn't represent a majority. And and also, I think it's really important to point out that we're dealing with elected officials who are sitting on the dais, who have the ability and freedom. Actually, under under California law, there's a government code section that actually references the fact that members of a legislative body have the right to speak and address issues and to make brief announcements and report on their own activities. That's the government code section five four nine five four point two subject subsection. Every one of these school board members could get up at the beginning of the meeting, the end of the meeting, talk as much about religion as they want. No, I'm not saying that, Your Honor. And that is why the school board tried to do what they could as reasonably as possible to adopt a policy that would limit the the this religious speaking, particularly by Mr. Cruz and Mr. Nah. And it was adopted unanimously. But the important one, Mr. Cruz said, I think there are very few districts of that powerfulness of having a board such as ourselves having a goal. And that one goal is under God, Jesus Christ. When he said that, did anybody from the school board say, no, that's not the policy of the board? He was not representing in that context what the policy of the board is in one member. Is it one having a board such as ourselves having a goal? And that one goal is under God, Jesus Christ. He was representing to the audience, to the school children there, to everyone, that that was the goal of the school board. Well, Your Honor. Did nobody from the school board say, no, that's not our policy? Your Honor, they did when they adopted the policy that limits his speech. Absolutely. And the majority of the board did that. And I would like to also point out that when those statements were made hours after the invocation, and there's no evidence even school children were even present at that point in time as well. I would, I see my time is going to come short here. So if I'm going to reserve enough time to. Well, I want to ask you another question. What's the purpose of the prayer? It's to give spirit to the school board members, to strengthen them in their performance of their duties? Your Honor, the invocation policy itself references in the recitals various purposes that are. But basically it's to inspire the members of the school board. It is, as the town of Galloway said, in particular, the purpose of invocations before school board meetings is to help bring people to an attitude of setting aside their petty differences and to seek divine guidance and solemnize these opportunities for the school board itself, for the legislative body. OK, then why is it that so much of the important business of the board is conducted before the invocation? Are they not inspired in that when they make their disciplinary decisions and all of the activity that goes on before the prayer? Your Honor, it's been a tradition and practice of of having these invocations at the beginning of the public meetings. But you want to inspire the school board members who, before the prayer, are deciding to expel students, to discipline students. Some of the most important decisions they make come before the prayer, and they don't have that inspiration, that desire of unity when they make all those other decisions? Your Honor, it may very well be that after they get out of closed session, they need to have that prayer so they do have that unity and opportunity to be able to focus properly. I'm asking the question because if there were a serious argument that you're going to inspire these school board members to do their job properly, it's hard to understand why that comes after they first have a session where they do so many important things that affect the students, including expulsion, discipline, all of those activities. And they don't seem to want them to have that inspiration or think that it's important that they have them before they make all those decisions. I appreciate your point, Your Honor. However, there's nothing in the record to suggest that they don't think it's important prior to the closed session. But we have to go back and take a look at where the U.S. Supreme Court has articulated in the town of Greece, in the Galloway case, when the public said, because the same thing happens in town meetings where there's closed session, they come out, and then they have their public meeting, and just prior to the public meeting, the invocation occurs. That has been approved by the U.S. Supreme Court. And so I understand what you're saying, but I don't believe that… Congress doesn't go out and take their votes and then come out and then have a prayer. They have the prayer before Congress is convened. And the same thing with the state legislatures. The prayer is not after they act and do their job, and then they get inspired.  Well, Your Honor, the tradition as I see it in the town of Greece and in the city of Reuben, the city of Reuben was a case here in California, excuse me, Reuben versus city of Lancaster. And this Ninth Circuit declared that the invocation policy that the school board has adopted, the same invocation policy, was constitutional. It declared under the same settings, under the same government code, under the same process, under the Brown Act, the same procedures, a closed session, it comes into open session, pledge of allegiance, invocation, and it continues on with the business affairs of the city. The same thing happened here in the city of Lancaster case, and this Ninth Circuit approved it. Your Honor, I see I have ten seconds for rebuttal. We'll give you time for rebuttal. Thank you. Your Honors, good morning. May it please the Court, I'm David Colley, an atheist. I represent the plaintiffs and the appellees. I was counsel of record in the district court. Your Honor, appellants make the incorrect assumption that a school board is a legislative body. It is not a legislative body. Categorically, school boards are different. They're different in purpose. They're different in function. They're different in structure. The district court was correct to find that the Chino Valley Unified School District Board of Education is not a legislative body such that Marsh and Town of Greece and the legislative prayer exception would apply in those cases. Legislative bodies have a primary function of enacting laws, rules, policies, that affect a broad spectrum of the population within their jurisdiction. That is all a legislative body does. A school board does far more. Sure, it will enact rules. It will enact policies. They are designed for one primary and important purpose, and that is for the education of children. They are not answerable to those children. Those children do not elect them. The children have no voice. These are members of the community who are elected by people to whom their decisions only tangentially apply. Moreover, a school board does more than just enact policies. As the court noted and the record demonstrates, the school board also acts as a law enforcement body. It determines have the policies, have the rules been violated. The school board also meets out punishment. It determines what a student may or may not do, what the consequences of possible violations are, and whether or not that student can enjoy the public education system in the district. That is a far cry from the legislative bodies that Marsh and Town of Greece have carved out the narrow exception for the legislative prayer. All right, so in some respects it has different functions, but why should that make the rule different as far as prayer? Your Honor, so Marsh and Town of Greece did not create a categorical exception for legislative prayer. It's a narrow exception. There is no evidence below that the type of legislative prayer that has historically been permitted in our nation for those type of legislatures has any application to a school board. So, counsel, I understand that you want us to do, to come out and have a bright line role. If you're a school board, you're not entitled to do invocations because, and that way no school board, public school board in the Ninth Circuit could do an invocation irrespective of the functions of that particular school board or who attends the school board meeting or the fact-specific things about each school board, right? You want that broad ruling. But why couldn't we do a narrow ruling that says this school board does these particular things. It has awards. It has a student member. And just look at the fact-specific characteristics of what goes on at the Chino Valley School Board to determine that it violated the Establishment Clause. Well, the Court certainly has that opportunity, but I think that that would not be the appropriate analysis under Establishment Clause jurisprudence. Why not? Why not just go straight to Lemon and say did it violate the Establishment Clause? And Lemon is the appropriate test. And when the Court looks at Lemon, I think the Court has to look at not just what does one particular school board do, but what is the purpose and structure, what is the essence of a school board in and of itself because that's the starting point. Appellants want to try to parse the school board as if it's not an integral part of the school setting. I think counsel just said that under state law, California state law, that school boards are defined as legislative bodies. At least he read a statute that said that. That's incorrect. What the statute says is that for the purposes of California's Open Meeting Act, the Brown Act, school boards are considered legislative bodies so that they must comply with the Open Meeting Act. The fact that the legislature carved out the phrase for school boards as opposed to just general legislative bodies indicates that the legislature of California recognizes a distinction for school boards. So it's not correct to say California has categorically classified school boards as legislative bodies for all purposes. It seems that we have some cases that go in the opposite direction, right? Do you think we have a circuit split on consideration of school boards or do you think the cases can be reconciled? McCarty, I think, is from our perspective because school boards are categorically different or should be treated categorically different. McCarty is wrongly decided because it doesn't do the analysis of the fifth circuit case. Yes, Your Honor. Because it never did any analysis of the structure of the school board. The only analysis is that the court finds it's more like. I think the phrase is it fits more like into the category of a state legislature than a school classroom. So it makes this very general conclusion. Well, right around. I mean, the question is we would create a circuit split, which isn't the end of the world as far as I'm concerned. But nevertheless, it's a factor that we take into account. I'm not sure it would create the circuit split, Your Honor, and here's why. Because McCarty specifically says that it's being decided on its narrow facts and it compares itself to the third circuit and the sixth circuit cases that were decided before Town of Greece and stated that the reason those cases were held that the school board invocations were not appropriate were because of the distinct facts in those cases as opposed to McCarty. So the circuit split would be that the fifth circuit says there's not a categorical approach, where I'm saying there should be, but under McCarty's own analysis, the Chino Valley Unified School District Board of Education's policy would still fail. Our facts show, as the court noted, that there was much more involvement of students in these board meetings. We have a sitting board member who votes that is a student. We have students that are giving the Pledge of Allegiance moments before or after the invocation. We have students performing. We have students coming to get accolades, to get their honors. But more important, we have the almost compulsory, mandatory attendance at the closed session for disciplinary purposes. These are facts that are not at all present in McCarty. McCarty involved, most notably, student expression. It was the students that were giving the prayer during an open expression period of time. This was not a policy for adults or the board to give prayer. This was for the students to express whatever they wanted within limits of propriety and appropriate decorum. Now, the Supreme Court has, I guess a cert petition is pending in McCarty? That's correct, Your Honor. Okay. And so a cert hasn't been granted? To my knowledge, it hasn't been granted. I believe the petition was filed over the summer. And the same in Lund? There's a cert petition pending as well? Correct. Okay. Correct. Your Honor, so, yes, we think that categorically school boards are different and should be found different in the sense that they are an integral part of the school itself and can't be divorced from that. Do you think we should delay our decision until we see what the Supreme Court does about those cert petitions? Well, certainly not for Lund, because that's not even a school case. But for McCarty, I don't think it's necessary for the court to delay the decision. And, in fact, I think it would be instructive and helpful to the Supreme Court to see what other cert is. I think we could help educate the Supreme Court. I think that this Court could do much to educate. The Supreme Court is going to listen to what we say. They've shown a lot of interest in our attitudes. They have. But I think that it would be instructive, particularly because Justice Kennedy has, in Lee v. Weissman, emphasized again and again the difference that it makes when we are talking about a public school setting. And I think that because of the egregious facts in this case, it presents a different color as to the problems that a public school setting. Well, that's why I'm making the inquiry about school boards categorically versus school boards fact-specific, because I am inclined to agree with you that the conduct as found by the district court was particularly egregious in this case. And for the result, I think whether the Court finds that we're correct, that there is a categorical approach that should be applied, or fact-specifically, I think that Judge Bernal's decision and judgment should be affirmed under either test. But, again, only looking at the fact-specific. All Establishment Clause cases require a very delicate factual analysis. But, again, we are talking about the category of school versus legislative body. And that is the distinction that will make the difference as to the further analysis, because we don't then even get to, is there a legislative prayer exception, and using the historical analysis rubric for the case. Instead, we look at it as a school prayer case, and we go through the analysis of the facts under that setting. However, even if the Court were to consider McCarty's approach, again, Judge Bernal's decision is the correct result, because our facts are so egregious. This is not just about a prayer invocation that is a very generic, solemnizing event. The Court noted, this invocation does not take place at the beginning of the meeting. It takes place in the middle of the meeting, at the beginning of the open session. Had the Board truly wanted to solemnize the meeting for itself, it would have put that prayer, that invocation, in the closed meeting instead. It is disingenuous for the Board to argue that the prayer is directed only to the Board members, the adults, because the Board members include a student who represents the students of the district. That student votes at the meetings. The fact that the student doesn't have to attend every meeting is really irrelevant to the analysis. So, even under McCarty's standard, Judge Bernal came to the correct decision under these facts, but it's these facts that show why the categorical approach is the more appropriate analysis, because our facts demonstrate you can't separate the school board from the school itself. But what if they decided to make the school board meetings antiseptic? What if they decided, okay, we're not going to have a student member, we're not going to give out awards or honors, and we're not going to have, they have to have an open meeting, but we're not going to have students. They have to have an open meeting because of the Brown Act, so they'll have the public, but there'll be adults who can, like at legislative sessions, can get up and leave with no attention paid to them, or not participate in an invocation, not bow their head, and no one's going to care. But the school board did that so that it could give itself an invocation. I'm not sure the school board would have the authority under California law to change the meeting to that extent, Your Honor. It is not an issue I looked at. I imagine that a legislative body could craft legislation regarding a school board in that way, but the problem comes back to this. Structurally, what's the function of the school board? It is, again, whether the students are there or not isn't really dispositive. Whether or not they receive awards at the board meetings isn't dispositive. These are individuals who the children recognize as the authority over their education, and they have no say to oppose, object to any of those decisions, because they're not the ones electing the board. You can't, even if you were to structure the meeting differently. Well, let's assume. I mean, I don't see what the problem would be in just having a straight school board, but the students have to be allowed to attend if they want to. You can't exclude them from the meeting. But you don't have to conduct, you know, forget the disciplinary stuff. You just had a regular school board meeting, and it was everybody came who was interested in coming, and there was no mention of religion except in the prayer at the very beginning of the meeting. Would that be all right? I still think no, because, again, what we're talking about is the government to the students, the authority of the state as embodied in the board members in front of the students. How is that distinguishable? Because the legislature is the governance of all of us. And the legislature also enacts laws of broad application not specific to the students. So what we have is a public meeting where, again, the government of the students is not engaging the students, and they are yet making decisions that affect the students' very daily lives. And so, once again, we're trying to take the school board in a hypothetical and place it into a legislative context that just doesn't fit, because regardless of what happens during the meeting, school boards are still tasked with disciplinary action. So even though that may not happen in this meeting, the students know this is the board that decides my fate. This is the board that decides if I violated policy. This is not just the board that enacts rules for me. This is the board that tells me I've done something wrong and punishes me for that. You can't separate the structure of the school board from the school setting, even if you change the nature of the meeting. Let me ask a related but different question. The district court's decision says as follows. Students are in regular attendance. We're talking about the Chino Valley School Board meetings. One student representative is a member of the board and is responsible for representing the student's body's interests. Other students attend board meetings to receive awards for their accomplishments, publicly celebrate their extracurricular successes, and perform alongside their classmates. Student preparations to the board are a regular feature of the agenda and immediately follow the opening prayer. Let's assume that Chino Valley wanted to change the way in which students were involved so that it's just the opposite of what I've read. How would that happen and could it happen? I believe that it would require some legislation by the state legislature because the education code does specify very specifically what the school board meetings must include and how they must function. Each district then has some discretion within itself. And so I don't think the Chino Valley Unified School District itself could materially change all those aspects. So you're basically asking us for a policy, for a ruling, that school boards per se can't have it. And we cover nine states. It's not just what you could do in California. If we were to say a school board is different from Congress, from a legislative body, it wouldn't matter what California's laws are particularly. We would be saying something that would apply to all nine of the states. That's correct, Your Honor. That is exactly what we're asking. Because we do believe that Judge Bernal got it right, that this is not a legislative body that fits the Marsh Town of Greece, narrow exception. And we have to remember, even Town of Greece says this is a narrow exception. It does not – the reason it applies in this type of setting is because there is the similarity between the town council, the state legislature, Congress. And it recognizes and emphasizes that we're talking about mature adults being affected in those gatherings, not students, not children who are there in front of the governing body of their daily lives and their education. Your Honors, my time is almost up. Unless the Court has any further questions, I'll submit. Thank you very much. We'll give you three minutes if that would be enough. Thank you, Your Honor. I will do my best to make sure that is. Your Honor, the position of the Freedom from Religion Foundation is frankly extreme. It is such that no invocations would be permitted in any school districts. And the argument that students are present and – or, excuse me, that the decisions of a school board affect students I think is somewhat erroneous as well because the decisions of the city council may have an even greater effect on a student if – whether or not they permit, you know, a miniature golf facility to locate down the street or some – whether they allow the recreational facilities to be expanded for their soccer clubs. So I think that it's extreme to make the argument that it's impossible for – or it should not be possible for an invocation to be permitted in school board meetings. I would also like to point out that the dissent, Justice Kagan, in the town of Greasecase, she pointed out that in city council meetings, in the record there, Boy Scouts gave the Pledge of Allegiance. They were present. Students come for civics credit from their high school classes. And in the Fifth Circuit, in McCarty, I think it's important to point out that students themselves gave the prayer. They were present. And so the fact is is in that in all of these cases, whether it's a city council setting in the city of Lancaster case in the Ninth Circuit, whether it's the town of Grease, whether it's McCarty, or whether it's the Chena Valley Unified School District, students are present at times. And the courts have not allowed the mere fact that students might be present to cause legislative prayer to become unconstitutional. Rather, it's a tolerable recognition of the effect that religion has had on our society. I believe that might have been Justice O'Connor, or it was stated in Marsh. But, Your Honor, it is, I think, an extreme position that is being taken by our opposition. What would you think about our, this morning, if we had started out by having a minister come and pray to Jesus Christ as our opening for this court session? Well, first of all, I'm not aware of any rich history and tradition of that occurring other than in the U.S. Supreme Court where a statement is said, God save the court, which continues today. No, I didn't say God save the court. Instead of that, they paraded a rabbi out or a minister out before we had or the court had its arguments to inspire us to perform our duties properly. Your Honor, I think it's a far different situation. There is no history and tradition. That is where the U.S. Supreme Court has come down on the issue of legislative prayer. If it is a legislative body. So that what saves you is the rich tradition of doing this at school board meetings. It is a rich tradition that has occurred in legislative bodies, from Congress to state legislators to city councils and to school boards. And Galloway does, specifically, Galloway does not limit itself. No, you said there's a rich tradition as to school boards. Is that true that there has been? Your Honor, we cited in our brief, there's a law review article by Wicks, the Congressional Prayer Caucus. Also, as I said, I believe it's pages 7 and 9 addressing the history. But that is not the critical question. The critical question is whether there is a rich history in legislative bodies. That is how the U.S. Supreme Court looked at it when addressing whether or not the town of Greece should be permitted to allow invocations. It wasn't necessarily whether or not there's a rich tradition in history for city councils. It's not unique to that city and it's not unique to the governing type of body. But the question is whether or not an invocation policy in a legislative body follows the history and tradition that has been long described since Congress first began meeting. I appreciate your time, Your Honor. Do you have any more questions? Thank you. Okay, thank you. The case just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Reinhardt, Wardlaw, Daniel